IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JESSE THOMAS, | | |
| Plaintiff, | | No. 07-CV-7131 |
| v. | | Honorable Judge Guzman |
| EXXON MOBIL CORP., | | Magistrate Judge Mason |
| Defendant. | | |

**PLAINTIFF'S COMBINED MOTION TO DISMISS AND MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES PURSUANT TO FED. R CIV. PRO. 12(b)(6) and 12(f)**

Plaintiff JESSE THOMAS by and through his attorneys, pursuant to Fed. R. Civ. Pro. 12(b)(6) and 12(f) hereby moves this Honorable Court to Dismiss and Strike Affirmative Defenses filed by Defendant and in support thereof states as follows:

**Introduction**

On April 11, 2008, Defendant Exxon Mobil filed its Answer along with eighteen affirmative defenses. Defendant's affirmative defenses nos. 6, 7, 9, 12, 14 and 16-17 (though not all entirely clear) fail to state a claim upon which relief can be granted. Plaintiff respectfully requests this Honorable Court to dismiss these affirmative defenses pursuant to Fed. R. Civ. Pro. 12(b)(6). Defendant's affirmative defenses nos. 1 -5, 8, 10-11, 13, 15, and 17-18 suffer from various infirmities including but not limited to a failure to provide factual support, failure to be affirmative defenses at all, and failure to meet the standards for pleading affirmative defenses. Plaintiff respectfully requests this Honorable Court to strike these affirmative defenses pursuant to Fed. R. Civ. Pro. 12(f).

1

Argument

A.    **Affirmative Defenses 6, 7, 9, 12, 14 and 16-17 Fail to State a Claim**

Affirmative defenses are pleadings and thus subject to the same requirements under Fed. R. Civ. Pro. 8 as Complaints. See *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F. 2d 1286, 1294 (7th Cir. 1989). The Sixth, Seventh, and Ninth Affirmative Defenses relate to conditions precedent to filing suit under Title VII which, under the well pled allegations of the Complaint, have been met. The Twelfth and Fourteenth Affirmative Defenses assert good faith as a basis to avoid liability, which is not available in this case under Supreme Court Precedent. And Defendant's Sixteenth Affirmative Defense asserts the exclusivity provisions of the Illinois Worker's Compensation Act, which simply does not apply to the injury at issue. Although none of these affirmative defenses are supported by enough factual allegations to stand, regardless of the allegations, the conclusions set forth in them are inconsistent with the law of this Circuit and District.

    1.    <u>Exhaustion Defenses</u>

Defendant's Sixth Affirmative Defense is that Plaintiff failed to exhaust his administrative remedies for one or more of his claims. Defendant's Seventh Affirmative Defense is that he failed to comply with the enforcement provisions of Title VII and/or failed to fulfill all conditions precedent to maintaining an action under Title VII.

Defendant's Sixth and Seventh Affirmative Defenses are vague as to exactly how Plaintiff failed to exhaust his administrative remedies, failed to comply with the enforcement provisions of Title VII, or failed to fulfill all conditions precedent to maintaining an action under Title VII. However, the implication is that by receiving a notice of right to sue prior to the expiration of 60

days (IDHR's right to investigate) and 180 days (EEOC's right to investigate) the administrative enforcement mechanism of Title VII is frustrated. Defendant's Sixth and Seventh Affirmative Defense should be dismissed for failing to state a claim because this Circuit and District have not recognized these requirements.

Before filing a Title VII lawsuit in federal court, a plaintiff must (1) timely file a charge with the EEOC, and (2) receive a right to sue letter from the EEOC. See *Zugay v. Progressive Care, S.C.*, 180 F. 3d 901, 902 (1999). In states like Illinois, which have their own state administrative remedy for employment discrimination claims, the enforcement provisions of Title VII dictate that a plaintiff must allow the state or local agency an initial deferral period of 60 days to investigate a charge of discrimination. Nowhere does Title VII state that a plaintiff must actually complete state administrative processes before pursuing federal remedies. See *Id*.

    a.    The 60 Day Deferral Period

The initial 60 day deferral period is subject to waiver by the state or local agency pursuant to a worksharing agreement between the state agency and the EEOC. See *Zugay*, 180 F. 3d at 903 (FN 2 citing *Sofferin v. American Airlines, Inc.*, 923 F. 2d 552 (7th Cir. 1991)). In *Sofferin v. American Airlines, Inc.*, 923 F. 2d at 558, the 7th Circuit cited the U.S. Supreme Court decision in *Love v. Pullman*, 404 U.S. 522 (1972), holding that the Title VII deferral requirement was satisfied so long as the state agency had an opportunity to process the charges first. The *Sofferin* court concluded that a worksharing agreement could establish a procedure that permitted the plaintiff's original filing with the EEOC to commence and terminate state proceedings. "We do not believe that a state would be deprived of its reasonable opportunity to act under state law if this state waived

3

its right to process initially certain types of claims pursuant to a worksharing agreement." See *Id*. Therefore, because the Illinois Department of Human Rights and the EEOC do have such a worksharing agreement in place, the IDHR waived its 60 day initial deferral period, Plaintiff was under no obligation to wait the 60 days, and Plaintiff validly exhausted his administrative remedies by first, filing with the EEOC within 300 days of his termination and second, by obtaining a right to sue letter from the EEOC.

      b.      The Early Right To Sue

Administrative exhaustion in general has become an issue in recent years due to challenges to the validity of EEOC regulation 29 C.F.R. §1601.28(a)(2), authorizing the Commission to issue early Right to Sue Notices "at any time," provided the Commission also determined that it would probably not be able to complete processing the charge within 180 days of its filing. There is a Circuit split as to whether lawsuits premised on these early Right to Sue Notices must be dismissed for failing to exhaust administrative remedies.

In *Martini v. Federal National Mortgage Association*, 178 F. 3d 1336 (DC Circuit 1999), the plaintiff filed a charge with the EEOC and was issued a Right to Sue Notice upon request 21 days later pursuant to EEOC regulation 29 C.F.R. §1601.28(a)(2). The defendant relied on the statutory language of Section 2000e - 5(f)(1), which says that a grievant may sue under Title VII if the Commission dismisses the charge or if no acceptable conciliation is reached within 180 days after the charge is filed. See *Martini*, 178 F. 3d at 1342. Acknowledging that both the Ninth and Eleventh Circuits agreed that Title VII lawsuits premised on Right to Sue Notices received prior to the 180 days were perfectly valid, the *Martini* court determined that "Congress well understood that the

EEOC's limited resources preclude it from investigating every charge within 180 days, but nevertheless 'hoped that recourse to the private lawsuit will be the exception and not the rule.'" See *Id.* at 1346. Finding that the EEOC's regulation undermines its statutory duty to investigate every charge filed, the *Martini* court held that Title VII complainants must wait 180 days after filing charges with the EEOC before they may sue in federal court. See *Id.* at 1347.

The Ninth and Eleventh Circuits, on the other hand, have held to the contrary, noting that nothing in the statutory language of Title VII prohibits the EEOC from issuing a Right to Sue Notice prior to the expiration of the 180 days. See *Saulsbury v. Wismer and Becker, Inc.*, 644 F. 2d 1251 (9th Cir. 1980); see *Brown v. Puget Sound Apprenticeship and Training Trust*, 732 F. 2d 726 (9th Cir. 1984); see *Sims v. Trus Joist Macmillan*, 22 F. 2d 1059, 1061 (11th Cir. 1994) ("We find these rationales persuasive: (1) 29 C.F.R. § 1601.28(a) does not prohibit the EEOC from issuing an early right to sue notice prior to the expiration of a 180-day period; (2) the purpose of the 180-day period is to protect the aggrieved party from extended administrative proceedings or bureaucratic backlog; and (3) where the EEOC determines, due to its huge backlog, that it cannot investigate an aggrieved party's charge within the 180-day period and notifies the aggrieved party that it is terminating its investigative efforts, it is pointless for the aggrieved party to stand by and mark time until the 180-day period expires").

Although the Seventh Circuit has yet to address this precise issue, Northern District of Illinois judges have had occasion to do so. In *Rolark v. University of Chicago Hospitals*, 688 F. Supp. 401 (N.D. Ill. 1988), the defendant moved to dismiss the plaintiff's claims on the basis that the EEOC had processed plaintiff's claims without prior deferral to the IDHR. The Court, Judge Morgan, held that in entering into the worksharing agreement with the EEOC, the IDHR waived its

5

exclusive 60-day right to process charges initially processed by the EEOC. See *Rolark*, 688 F. Supp. at 402.

In that same case, Defendant also argued that the plaintiff had failed to wait 180 days before filing her lawsuit in federal court, challenging the validity of EEOC regulation 29 C.F.R. §1601.28(a)(2) authorizing issuances of early Right to Sue Notices. The Court held that Rolark's cause of action would not be restricted by the administrative decisions of the EEOC, stating that while Congress showed clear preference for conciliatory efforts at the administrative level prior to suit in federal court, there is nothing in the Act which prohibits the EEOC from relinquishing its jurisdiction. See *Id.* at 404.

Here, Mr. Thomas was issued an early Right to Sue by the EEOC. The IDHR has waived its right to a 60 day deferral period in its worksharing agreement with the EEOC. The Ninth and the Eleventh Circuit, as well as one Northern District of Illinois decision, have all determined that the EEOC's regulation authorizing the issuance of early Right to Sue Notices is perfectly valid and does not affect a plaintiff's right to sue in federal court. In light of this authority, Defendant's sixth and seventh affirmative defenses fail to state a claim upon which relief can be granted and should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

    2.    <u>Exceeding the Charge</u>

Defendant's Ninth Affirmative Defense is that "Plaintiff failed to exhaust administrative remedies to the extent Plaintiff's Complaint asserts claims other than those raised in Plaintiff's August 9, 2007 EEOC charge." In some circumstances, a failure to exhaust administrative remedies may be premised upon the fact that a plaintiff's Title VII claims were not included in the original

EEOC charge. See *Harper v. Godfrey Co.*, 45 F. 3d 143, 147-48 (7th Cir. 1995). Nonetheless, administrative exhaustion will not be an issue where these new claims are like or reasonably related to the EEOC charge and the claims alleged in the complaint could reasonably have developed from the EEOC investigation of the original charge. See *Id.*; See *Cheek v. Western & S. Life Ins. Co.*, 31 F. 3d 497, 500 (7th Cir. 1994). In this case, Plaintiff timely filed three separate charges with the EEOC, on August 9, 24, and 30, 2007, all three upon which EEOC issued a single early Right to Sue Notice. Taken together, these charges allege that Plaintiff filed a charge of discrimination in June 2005, that during the course of Plaintiff's employment he was harassed and disciplined, that Plaintiff was suspended on August 6, 2007, suspended on August 22, 2007, terminated on August 27, 2007, that Plaintiff was discriminated against by his employer because of his race, Black, and retaliated against for engaging in protected activity. Although Defendant cites to no facts alleged by Plaintiff in his Complaint that were not alleged in the original EEOC charge, all the facts in the Complaint are based on charges filed with the EEOC for which Plaintiff received notices of right to sue.[1]

    3.    <u>Good Faith Defenses</u>

The Twelfth, Fourteenth, and Seventeenth Defenses go to Exxon's "Good Faith." Under *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998), where no tangible employment action is taken, an employer may assert an affirmative defense to vicarious liability for actions taken by a supervisor by showing first, that the

---

[1] Plaintiff proceeds here only on the retaliation charges. The charges of harassment and discrimination were already taken to the Federal Court and dismissed by Judge Lefkow with prejudice for want of prosecution by Mr. Thomas' former counsel. To the extent that Defendant nonetheless believes that the Retaliation claims pled in the Complaint reach beyond the charges, it is incumbent upon it to identify specifics as discussed hereafter in Section B.1.

employer exercised reasonable care to prevent and correct promptly the adverse behavior, and second, that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. However, where the adverse action is by its nature tangible, no such defense is afforded to the employer. See *Farragher*, 524 U.S. at 808; see *Burlington*, 524 U.S. at 762-63. In this case, Plaintiff's Complaint asserts retaliatory suspension and termination – tangible actions. As such, the good faith affirmative defenses are not available. In any case, even if available, Defendant's good faith affirmative defenses are at the very least inadequately pled, as Defendant has cited to no facts in support of these good faith defenses (see Section B.1 below).

    4.    <u>Worker's Compensation Exclusivity</u>

Defendant's Sixteenth Affirmative Defense is that Plaintiff's claims are barred in whole or in part by the exclusivity doctrine of the Illinois Workers Compensation Act. Although Defendant is unclear as to exactly how Plaintiff's claims are barred, in whole or in part, by the exclusivity doctrine of the Workers Compensation Act, it is difficult to see how the Workers Compensation Act would cover or apply to Plaintiff's cause of action at all. The exclusivity doctrine of the Illinois Workers Compensation Act provides:

> No common law or statutory right to recover damages from the employer, his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury. See 820 ILCS 305/5(a).

The fundamental purpose of the Act is to provide financial protection to Illinois workers in the event they sustain accidental injuries during the course of their employment. The statutory scheme of the Act provides that injured employees are entitled to recover monetary compensation for their injuries without establishing negligence on the part of their employers. See *Whitehead v. AM Intern, Inc.*, 860 F. Supp. 1280, 1289 (N.D. Ill. 1994). The key is the accidental nature of the injury. Section 11 defines the types of injuries provided for in the Act:

> The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation **for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act**, and whose election to continue under this Act, has not been nullified by any action of his employees as provided for in this Act. See 820 ILCS 305/11.

The Act does not protect an employer even from common law liability where the harm was intentional. See *Whitehead*, 860 F. Supp. at 1289.

Plaintiff does not seek to recover damages arising from accidental injuries he sustained while engaged in the line of duty for the Defendant which would be covered by the Illinois Workers Compensation Act. Plaintiff seeks to recover damages for retaliation in violation of 42 U.S.C. §2000e, et seq. (Title VII of the Civil Rights Act of 1964, as Amended). Under Title VII, Plaintiff is entitled to request damages such as front pay, back pay, compensatory and punitive damages, and attorneys fees. As such, Defendant's Sixteenth Affirmative Defense fails to state a claim upon which relief can be granted. In any case, a state law that interferes with or is contrary to a federal law would be preempted under the Supremacy Clause of the Constitution. See *Hillsborough County, Fla. v. Automated Medical*, 471 U.S. 707, 712 (1985).

**B.     Defenses 1-5, 8, 10-11, 13, 15, and 17-18 Fail to Meet Pleading Standards**

Affirmative defenses are pleadings and are subject to all pleading requirements of the Fed. Rules of Civil Procedure. See *Heller*, 883 F.2d at 1294. As such, they need to comply with the requirements of Fed. R. Civ. Pro. 8(a) in that they must state "(2) a short and plain statement of the claim showing that the pleader is entitled to the relief."

The remainder of Defendant's Affirmative Defenses are as follows: Some or all of the allegations in Plaintiff's claim fail to state a claim upon which relief can be granted (AD 1); Plaintiff failed to mitigate some or all of his damages (AD 2); Plaintiff cannot state a prima facie case of retaliation or cannot establish that Defendant's legitimate, non-discriminatory motives were pretext for retaliation (AD 3); Defendant would have taken the same adverse employment actions regardless of whether Plaintiff complained (AD 4); Plaintiff by his own acts, errors, omissions, and conduct is barred and estopped from any recovery in this action (AD 5); Plaintiff's claims are barred to the extent that they concern events outside of the limitations period prior to the filing of Plaintiff's charge of retaliation (AD 8); Exxon Mobil's actions against Plaintiff were legitimate and non-retaliatory (AD 10); Exxon Mobil did not deny Plaintiff any benefits to which he was entitled (AD 11); Some or all of Plaintiff's claims are barred by the applicable statute of limitations (AD 13); The challenged practices were job-related, consistent with business necessity, and are not causally connected to any protected activity alleged by Plaintiff (AD 15); Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by Exxon Mobil or to avoid harm otherwise (AD 17); and Exxon Mobil is not liable for punitive damages because no act was committed with malice or reckless indifference to Plaintiff's protected rights (AD 18.) All of these affirmative defenses must be stricken as failing to comply with the requirements of Fed. R. Civ. Pro.

8.

        1.      <u>Inadequately Pled Defenses</u>

In *Reis Robotics USA, Inc., v. Concept Industries, Inc.*, 462 F. Supp. 2d 897 (N. D. Ill. 2006), the Northern District of Illinois addressed a series of affirmative defenses finding many to be inadequately pled. "Even under the liberal notice pleadings standards of the Federal Rules, an affirmative defense must include either direct or inferential allegations as to all elements of the defense asserted." *Id*. at 904. (Citing *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802 (N.D.Ill.2000) ("[B]are bones conclusory allegations" are not sufficient.)

Defendant's First Affirmative Defense must be stricken as inadequately pled because an affirmative defense must include either direct or inferential allegations as to all elements of the defense asserted. In fact, in *Reis Robotics*, the court (Judge Castillo) specifically struck the exact same defense (failure to state a claim) as inadequately pled, stating:

> Concept has failed to adequately plead the defense in accordance with Rule 8. Concept's first affirmative defense is nothing more than a recitation of the standard for a motion to dismiss under Rule 12(b)(6). As alleged, the defense provides no explanation as to how and in what portion the complaint Reis has failed to state a claim. See *Reis Robotics*, 462 F. Supp. at 905.

Defendant's Second Affirmative Defense, that Plaintiff's recovery must be reduced because Plaintiff failed to mitigate some or all of his damages, is also inadequately pled. It is again nothing more than a "Bare bones conclusory allegation," which is not sufficient. See *Renalds, supra*. The defense provides no explanation and points to no allegations in support of its defense that Plaintiff has failed in any way to mitigate damages. The same is true for Defendant's Fifth Affirmative Defense that Plaintiff by his own acts, errors, omissions, and conduct is barred and estopped from

any recovery in this action. Defendant has cited no allegations, no acts, errors, omission, or conduct that would support this affirmative defense. The same is also true for the Eighth and Thirteenth Affirmative Defenses which appear to be identical (citing no claims made outside the limitations period), and Seventeenth Affirmative Defense (citing no opportunities for corrective action of which Plaintiff failed to avail himself.)

### 2. Failure to Admit Truth of Facts Alleged in Complaint

By definition, an affirmative defense is "[a] matter asserted by [a] defendant which, *assuming the complaint to be true*, constitutes a defense to it. [It is a] response to a plaintiff's claim which attacks the plaintiff's legal right to bring an action, as opposed to attacking the truth of the claim." Black's Law Dictionary, 6th Edition, West Publishing, 1990, emphasis added. "Basically, an affirmative defense is an admission of the facts alleged in the complaint coupled with an assertion of some other reason as to why defendant is not liable." See *Cohn v. Taco Bell Corp.*, 1995 WL 247996 (N.D. Ill. 1995), citing *Instituto Nacional v. Continental Illinois National Bank*, 576 F.Supp. 985, 988 (N.D. Ill. 1983), citing *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736 (N.D. Ill. 1982).

Affirmative Defenses Three and Four simply contradict allegations contained in the Complaint, specifically ¶¶ 15-32, 34, and 36 and must be stricken as an affirmative defenses must assume the complaint to be true. See Black's Law Dictionary, *supra*. The same can be said of Affirmative Defenses Ten (contradicting ¶¶ 15-32, 34, and 36 of the Complaint), Eleven (contradicting ¶¶ 15-32 and 35 of the Complaint), Fifteen (contradicting ¶¶ 15-32, 34, and 36 of the Complaint), and Eighteen (contradicting ¶¶ 15-32, and 36 of the Complaint).

**Conclusion**

While Motions to Strike are generally disfavored, where they remove unnecessary clutter from the case, they can serve to expedite rather than delay. See *Heller*, 883 F. 2d at 1294. For the foregoing reasons and to ease discovery in this case, Plaintiff asks that the affirmative defenses pled in Defendant's answer be dismissed or stricken as appropriate.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court dismiss Defendant's Affirmative Defense Nos. 6, 7, 9, 12, 14 and 16-17 pursuant to Fed. R. Civ. Pro. 12(b)(6) and strike Defendant's Affirmative Defense Nos. 1-5, 8, 10-11, 13, 15, 17-18 pursuant to Fed. R. Civ. Pro. 12(f).

>                                     Respectfully submitted,
>
>                                     Jesse Thomas

Aaron B. Maduff
Atty. No. 6226932
Anne J. Kim                                        By: /s/Aaron B. Maduff
Atty. No. 6294382                                           Aaron B. Maduff
Maduff & Maduff, LLC
One East Wacker Dr.
Suite 2122
Chicago, Illinois 60601
312/276-9000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSE THOMAS,<br><br>                       Plaintiff,<br><br>      v.<br><br>EXXON MOBIL CORP.,<br>                      Defendant. | No. 07-CV-7131<br><br>Honorable Judge Guzman<br><br>Magistrate Judge Mason |

**Certificate of Service**

      I, Aaron B. Maduff, an attorney, hereby certify that Plaintiff's Combined Motion to Dismiss and Motion to Strike Defendant's Affirmative Defenses has been filed electronically on May 1, 2008 before 5:30 p.m.  Notice of this filing will be sent to the parties below via the Court's electronic filing system:

Jan Michelsen
Ogletree Deakins Nash Smoak & Stewart
111 Monument Circle, Suite 4600
Indianapolis, Indiana 46204


                                                     s/Aaron B. Maduff
                                                       Aaron B. Maduff

Aaron B. Maduff
Atty. No. 6226932
Maduff & Maduff, LLC
One East Wacker Drive
Suite 2122
Chicago, IL 60601
(312) 276-9000